UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TYAJAH WILLIAMS,

Plaintiff,

v.

RECOVERY INNOVATIONS INC et al.,

Defendants.

CASE NO. 3:24-cv-05496-DGE

ORDER ON MOTION TO EXCLUDE EXPERT TESTIMONY (DKT. NO. 35)

Before the Court is Defendants Recovery Innovations Inc.'s ("RI") and Michael Giles's motion to exclude the expert testimony of Dr. Tyson Bailey and Luke Fischer. (Dkt. No. 35.) Plaintiff opposes this motion. (Dkt. No. 49.) For the reasons that follow, Defendants' motion is GRANTED in full.[1]

[1] Pursuant to Local Civil Rule 7(b)(4), the Court decides it is able to decide the motion without oral argument.

## I BACKGROUND

### A. Factual and Procedural Background

For purposes of this order, the Court assumes familiarity with the underlying facts. (*See* Dkt. Nos. 56, 66.) As noted in the order on Plaintiff's motion to amend judgment, this lawsuit has been significantly limited to just one claim for wrongful discharge in violation of public policy. (Dkt. No. 66 at 10–14.) Accordingly, this order will address Defendants' motion to exclude in the limited context of Plaintiff's remaining claim.

On October 9, 2025, Defendants moved to exclude (Dkt. No. 35) two expert witnesses disclosed by Plaintiff (Dkt. No. 29). Defendant argues both experts fail to meet the standards required by Federal Rule of Evidence 702. (Dkt. No. 35 at 1.) Defendant also argues that both expert reports "fail to disclose basic items" required by Federal Rule of Civil Procedure 26(a)(2)(B), including past testimony and fees earned in this case. (*Id.* at 2.) In response, Plaintiff responds that her proffered experts' opinions are based on sufficient facts and data and that they have otherwise complied with the applicable rules. (See Dkt. No. 49 at 2, 5.) Plaintiff contends the *Daubert* motion is "essentially a discovery concern" that was not raised according to the Court's discovery dispute procedures and requests the Court impose sanctions on Defendants' counsel accordingly. (*Id.* at 1, 6.) In reply, Defendants identify Plaintiff's "fail[ure] to respond to the substantive grounds for exclusion" set forth by Defendants and reassert that Plaintiff's experts' opinions are not admissible. (Dkt. No. 54 at 1, 6.)

### B. Dr. Tyson Bailey

Bailey is a "board certified clinical psychologist" who was retained by Plaintiff to produce a psychological assessment expert report for this litigation. (Dkt. No. 36-1 at 17.) He has been employed as a Private Practice Partner at Spectrum Psychological Associates since

2011. (*Id.*) To produce his report, Bailey reviewed Plaintiff's personnel file and other documents, Plaintiff's responses and supplemental responses to Defendant's interrogatories and requests for production, and the discovery requests themselves. (*Id.* at 16.) He "interviewed and assessed" Plaintiff via video conference across two appointments a few days apart, for a total of over six hours. (*Id.* at 3, 10.) Bailey was retained to "determine if any mental health conditions are present, and if so, the likelihood they were caused by alleged behavior from a supervisor and wrongful termination by her employer." (*Id.* at 4.)

In the report, Bailey summarized Plaintiff's self-report of the incident with Giles that initially gave rise to this lawsuit and her comparative functioning before and after the incident. (*Id.* at 4–9.) He diagnosed Plaintiff with chronic Post-Traumatic Stress Disorder ("PTSD") but concluded she had not reported a sufficient number of depressive symptoms to diagnose her with Persistent Depressive Disorder. (*Id.* at 12.) He concluded she suffered a "significant psychological injury" after being threatened at work; though her symptoms may have developed or increased following the incident, she has continued to experience "a significant degree of impairment that began in 2023, on a more probable than not basis." (*Id.* at 14–15.)

**C. Luke Fischer**

Fischer is a Certified Public Accountant ("CPA") and has more than thirteen years of experience with cases "involving investigative accounting, financial analysis, fraud examination, and economic research." (Dkt. No. 36-2 at 11–12.) To prepare his expert report, Fischer read Plaintiff's first deposition transcript and reviewed her personnel file, Bailey's report, and Plaintiff's "various earnings records and history." (*Id.* at 2.) He also "considered normal and customary research data . . . among other wage information and statistics." (*Id.*) Fischer relied

on his experience with similar cases, knowledge of economic modeling, statistical techniques, and forensic analysis. (*Id.*)

In the report, Fischer opines that "but for the interruption to [Plaintiff's] employment," her anticipated income from October 5, 2023, through December 31, 2024, was $80,483. (*Id.* at 3.) This number is based on a predicted average hourly rate of $28.54 and an assumption that Plaintiff would have worked 2,200 hours from January to December of 2023. (*Id.* at 7.) Based on his calculations, Fischer determined that over the roughly fifteen months since Plaintiff's termination, and accounting for her mitigation of damages, her lost wages totaled $78,323. (*Id.* at 5.)

## II DISCUSSION

### A. Legal Standard

Federal Rule of Evidence 702 provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Additionally, Federal Rule of Civil Procedure 26(a) requires that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence" and that such witnesses must provide an expert report accompanying the disclosure. Fed. R. Civ. P. 26(a)(2)(A) and (a)(2)(B). These disclosures must comply with the court's scheduling order.

Fed. R. Civ. P. 26(a)(2)(D). A different date may apply to experts "intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(E). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

"Before admitting expert testimony into evidence, the district court must perform a gatekeeping role of ensuring that the testimony is both relevant and reliable under Rule 702." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019) (internal quotation marks omitted) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993)). This requires the court to determine if the expert's reasoning or methodology underlying the testimony: (1) is scientifically valid (i.e. reliable); and (2) can be applied to the facts at issue (i.e. relevant). *Daubert*, 509 U.S. at 592–593.

The reliability inquiry "requires that the expert's testimony have a reliable basis in the knowledge and experience of the relevant discipline." *Ruvalcaba-Garcia*, 923 F.3d. at 1188–1189 (internal quotation marks omitted) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)). In *Daubert*, the Supreme Court set out several factors that courts may consider in determining reliability: "(1) whether a scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error and the existence and maintenance of standards controlling the techniques operation; and (4) whether the technique is generally accepted." *Neal-Lomax v. Las Vegas Metro. Police Dep't*, 574 F. Supp. 2d 1193, 1201 (D. Nev. 2008), *aff'd*, 371 F. App'x 752 (9th Cir. 2010) (quoting *Daubert*, 509 U.S. at 593–94). "The inquiry under Rule 702 is a

'flexible' one, and the district court has 'the discretionary authority . . . to determine reliability in light of the particular facts and circumstances of the particular case.'" *Youngevity Int'l v. Smith*, Case No. 16-CV-704-BTM-JLB, 2019 WL 2918161, at *12 (S.D. Cal. July 5, 2019) (quoting *Kumho Tire*, 526 U.S. at 158); *see also Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) ("[A] trial court not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability." (internal quotations omitted)).

"Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)). In other words, expert opinion is relevant if it will help the trier of fact determine a fact in issue. *Daubert*, 509 U.S. at 591. "Reliable expert testimony need only be relevant, and need not establish every element that the plaintiff must prove, in order to be admissible." *Primiano*, 598 F.3d at 565 (citing *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007)).

The party seeking to introduce expert testimony evidence must show by a preponderance of the evidence that the testimony is admissible under Rule 702.

**B. Analysis**

**1. Dr. Bailey's Opinions**

Defendants request the Court exclude Dr. Bailey's opinions because they are not relevant under Federal Rule of Evidence 702. (Dkt. No. 35 at 2.) According to Defendants, Plaintiff described a "workplace disagreement over the appropriate course of treatment for a client" between her and Giles, her shift supervisor, which was the predicate event for Bailey's expert opinion. (*Id.* at 3.) Defendants argue that allowing Bailey's testimony would confuse the jury

"as to the issues being tried and . . . which issues they can assess damages for," because Bailey's testimony does not focus on Plaintiff's claims of intentional discrimination as articulated in her complaint and instead centers on the conflict between her and Giles—which does not make up a cause of action in this lawsuit. (*Id.* at 3, 4.) Plaintiff does not meaningfully oppose Defendants' motion to exclude Bailey on the basis of relevance, stating only that his opinions are "based on sufficient facts and data," the report is "the product of application of generally accepted principles in his field of psychiatry to those facts and data," and his opinions are "accurate to a reasonable degree of scientific certainty." (Dkt. No. 49 at 2.)

"Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (citation omitted); *see also City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (citation omitted) ("Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry."). Bailey's report is irrelevant in this matter. As discussed, the Court has reduced Plaintiff's lawsuit to just one claim for unlawful discharge in violation of public policy, specifically related to her seeking protected leave. (*See* Dkt. No. 66 at 10–14, 23.) But Bailey's report is entirely premised on Plaintiff's altercation with Giles—and RI's alleged lack of response—as the basis for her emotional distress; he does not opine about her emotional distress in the context of her attempted return from leave.[2] (*See generally* Dkt. No. 36-1.)

Specifically, Bailey opines Plaintiff "experienced psychological injury after being allegedly threatened at work, followed by experiences of institutional betrayal" and that "[w]hen considering the totality of the data, it is more probable than not that her current distress is

[2] Indeed, the only mention of Plaintiff's leave is in the discussion of her self-reported functioning after the incident with Giles: Bailey opines it was "'emotionally tiresome and draining'" for Plaintiff to receive pay on medical leave. (Dkt. No. 36-1 at 6.)

associated with the alleged workplace incident and resulting institutional betrayal." (*Id.* at 13, 14.) But as already identified, the workplace incident is not the subject of Plaintiff's remaining claim. In the Court's view, Bailey's opinions cannot be separated from the incident between Plaintiff and Giles. Allowing Bailey's opinions would insert unnecessary confusion about Plaintiff's alleged emotional distress related to her interactions with Giles. Accordingly, the Court cannot conclude Bailey's opinions are reliable or relevant to Plaintiff's remaining claim.

Defendants' motion to exclude Bailey's expert testimony is GRANTED.[3]

**2. Fischer's Opinions**

Defendants also request Fischer's expert report be excluded because it is "entirely reliant on erroneous values and is based on insufficient evidentiary review." (Dkt. No. 35 at 5–6.) They seek to exclude Fischer's report because its "methodology is seriously flawed, fails to even consider the facts of the case, and makes assumptions that are not based in or supported by the record[.]" (*Id.*)

Though methodology is the "'central focus of a Daubert inquiry . . . trial judges may evaluate the data offered to support an expert's bottom-line opinions to determine if that data

[3] Defendants also move to exclude Bailey's testimony because his expert report fails to comport with Federal Rule of Civil Procedure 26(a)(2)(B), and specifically, because he failed to provide a list of cases in which he testified as an expert in the last four years. (Dkt. No. 35 at 5; *see also* Dkt. No. 36-1.) Plaintiff provided the list in Bailey's declaration filed alongside her opposition brief. (*See* Dkt. No. 42.) Even if the Court finds the deficient disclosure was harmless or substantially justified, *see Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106–1107 (9th Cir. 2001), Plaintiff offers no justification for her failure to fully comply with Rule 26(a) and instead argues Defendants failed to raise the issue prior to filing their motion to exclude. (Dkt. No. 49 at 2.) But "[i]t was [Plaintiff's] burden to produce a supplemented disclosure, not [Defendants'] burden to ask for one." *Papadopoulos v. Fred Meyer Stores, Inc.*, Case No. C04-0102RSL, 2006 WL 3404950, at *3 (W.D. Wash. 2006). "The remedy for inadequate disclosure, as with late disclosure, is exclusion." *Killinger v. Progressive Direct Ins. Co.*, Case No. 2:22-CV-0012-MKD, 2023 WL 6190898, at *5 (E.D. Wash. 2023) (citing *Yeti*, 259 F.3d at 1107). This could be an alternate basis to exclude Bailey's opinions.

provides adequate support to mark the expert's testimony as reliable.'" *Klein v. Meta Platforms, Inc.*, 766 F. Supp. 3d 956, 961 (N.D. Cal. 2025) (quoting *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998)). Federal Rule of Evidence 702 "does not license a court to engage in freeform factfinding, to select between competing versions of the evidence, or to determine the veracity of the expert's conclusions at the admissibility stage." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1026 (9th Cir. 2022). However, if the court concludes there is "'simply too great an analytical gap between the data and the opinion proffered,'" it can exclude an expert's opinion. (*Id.*) (citation omitted).

Here, Fischer's opinion of Plaintiff's lost wages is not based on reliable information and should therefore be excluded. Defendants point out the following deficiencies:

- Fischer used the wrong rate of pay to calculate Plaintiff's alleged lost income. (Dkt. No. 35 at 6.) He apparently described Plaintiff's hourly rate as $28.54 per hour, when in reality, Plaintiff earned $22.50 per hour. (*Id.*; *see also* Dkt. No. 36-4 at 3.)
- Fischer's estimation that Plaintiff would have worked 2,200 hours in 2023 is unsupported by the record. (Dkt. No. 35 at 6–7.) Plaintiff was attending school during the relevant period; had a high-risk pregnancy during the relevant period; and had persistent attendance issues while employed, which all would have contributed to absences during 2023. (*Id.*; Dkt. Nos. 36-4 at 5; 36-5 at 3–6.)
- Fischer's calculations assumed Plaintiff would be fully employed by RI, even though the facility where Plaintiff worked was closed permanently in March 2024 and all employees were laid off. (Dkt. Nos. 35 at 7; 36-4 at 3)

- Fischer employed an unreliable methodology when he assumed Plaintiff would earn a ten percent base pay increase, which apparently was not based on any facts in the record. (Dkt. No. 35 at 7.)

Plaintiff does not meaningfully dispute these arguments; instead, she cites directly to Fischer's declaration, where Fischer supplements his expert report by explaining the sources of certain data that he then applied to his calculation of Plaintiff's lost wages. (*See* Dkt. No. 41 at 2–3) (explaining, for example, that the $28.54 hourly rate was pulled from the Employment Security Department's October 3, 2023 Work History Table and his estimation that Plaintiff would work 2,200 hours in 2023 was based on RI's report to the Washington Employment Security Department[4]). Some of the information in Fischer's report "directly contradicts" Plaintiff's deposition testimony, *Beasley v. State farm Mut Auto Ins. Co.*, Case No. C13–1106RSL, 2014 WL 1494030, at *5 (W.D. Wash. Apr. 16, 2014), such as his conclusion that she would be earning more than $28 per hour. Other information seems speculative or not sufficiently based on facts or data consistent with Rule 702, such as his opinion that Plaintiff would have been fully employed by RI in 2024, despite knowing that the RI facility employing Plaintiff closed around six months after her termination. The *Daubert* inquiry requires a trial court to determine "whether an expert 'had sufficient factual grounds on which to draw conclusions.'" *Elosu*, 26 F.4th at 1025–1026 (citations omitted). Fischer's opinions appear to be derived from external sources not specific to this case and is insufficiently tethered to the

[4] The earnings and hours worked identified by the Employment Security Department from July 2022 to December 2022 yield an hourly rate of $23.18. (*See* Dkt. No. 41 at 5.) For the period from January 2023 to June 2023, the hourly rate is calculated at $28.54. (*Id.*) It is unclear why there is a $5 difference in the hourly wage rate beginning January 2023. Notably, however, the Employment Security Department identifies that a claimant should compare the identified earning and hours with the claimant's W-2 forms to assure accuracy. (*Id.*) Plaintiff's own testimony disputes the data shown in the Employment Security Department statement.

evidence in the record. Because Fischer's opinion is premised on "'guesswork,'" the Court cannot conclude that Fischer's methodology and opinion is reliable or helpful to the jury. *Klein*, 766 F. Supp. 3d at 963 (quoting *Ruiz-Troche*, 161 F.3d at 81 (internal citation omitted)).

Along the same lines, Defendants argue Fischer's testimony should be excluded because he "failed to interview any witnesses and only reviewed limited documents in forming his opinions." (Dkt. No. 35 at 7.) Indeed, Fischer's report indicates he reviewed a small number of documents in forming his opinions (Dkt. No. 36-2 at 9–10), and in her response to the *Daubert* motion, Plaintiff concedes that Fischer's report was produced (and was not later supplemented) without taking her second deposition into account. (*See* Dkt. No. 49 at 5) ("Mr. Fischer has also now been made aware of the Deposition of [Plaintiff]"). The Court agrees that Fischer's failure to consider basic factual information from the record leads to the conclusion that his methodology was unreliable and his resulting opinion was not objective. (Dkt. Nos. 35 at 8; 54 at 4–5) (citing *United States v. Asiru*, 222 Fed. App'x 584, 587 (9th Cir. 2007) (excluding expert testimony of a CPA when he did not review relevant ledgers or source documents and did not interview witnesses from the relevant tax years)).

Defendants also argue Fischer should be excluded because his report "includes only simple mathematical calculations that could easily be performed and understood by an average member of the jury." (Dkt. No. 35 at 8.) Plaintiff does not respond to this argument. (*See generally* Dkt. No. 49.)

"There is not . . . an implicit requirement in Federal Rule of Evidence 702 that the proffered expert make complicated mathematical calculations." *Microsoft Corp. v. Motorola, Inc.*, Case No. C10–1823JLR, 2013 WL 4008822, at *6 (W.D. Wash. Aug. 5, 2023) (citations omitted). The key inquiry at this stage is whether the expert's opinion is helpful to the jury.

*Accord Pac. Fuel Co., LLC v. Shell Oil Co.*, Case No. CV 06-0225 AG (AJWx), 2008 WL 11336467, at *6 (C.D. Cal. Jan. 24, 2008) ("degree of difficulty [of the mathematical calculations] is not the relevant question"). Here, as discussed, Fischer's opinions are not helpful to the jury because they rely on information that is inconsistent with record evidence and/or is speculative. *See Elosu*, 26 F.4th at 1025–1026 (citations omitted). Therefore, it does not matter whether a layperson could conduct the same calculations as Fischer in determining Plaintiff potential lost wages; Fischer's testimony is excludable under Federal Rule of Evidence 702 because it is not based on reliable facts.

Finally, Defendants argue Fischer's report violates Rule 26(a)(2)(B) because he did not include a complete statement of the "how or why" behind his opinions, nor did he provide a statement of his compensation in connection with this case. (*Id.* at 9–10.) In her response, Plaintiff explains that several issues raised by Defendants "have been remedied" in Fischer's declaration. (Dkt. No. 41.) Apparently, Fischer's expert report was prepared before he reviewed the transcript of Plaintiff's second deposition, which was not taken until September 3, 2025. (Dkt. No. 41 at 1.) Notwithstanding, Fischer stated in his declaration he would "promptly" review the deposition transcript and "provide a revised report adjusting [his] findings to conform to that testimony." (*Id.*) As of the time of this order, Fischer has not provided that revised report. Here, as with Bailey, Plaintiff fails to justify her lack of compliance with the requirements of Rule 26(a). Plaintiff's disclosure is both incomplete and untimely, and she has not met her burden to prove her deficient disclosure was harmless. *Yeti*, 259 F.3d at 1106–1107. Neither has she satisfied her burden to supplement Fischer's expert disclosure. *See Papadopoulos*, 2006 WL 3404950, at *3. As such, the Court independently excludes Fischer's report based on her failure to comply with Rule 26(a). *See, e.g.*, *Killinger*, 2023 WL 6190898, at

*5; *Martinez v. Costco Wholesale Corp.*, 336 F.R.D. 183, 190 (S.D. Cal. 2020); *Ibekwe v. White*, Case No. CV 14–6523 DMG (JPRx), 2016 WL 6963051, at *4 (C.D. Cal. Feb. 23, 2016).

In conclusion, Defendants' motion to exclude Fischer's expert testimony is GRANTED.

**3. Plaintiff's Request for Sanctions**

Finally, the Court comments briefly on Plaintiff's request for sanctions (*see* Dkt. No. 49 at 6) for what she believes is Defendants' contravention of the Court's discovery dispute procedures. Plaintiff's position is that Defendants' motion is a discovery dispute disguised as a *Daubert* motion, and that Defendants failed to confer according to the Local Rules prior to filing. (*Id.* at 1.) However, discovery motions (and, by extension, the Court's discovery dispute process) are distinct from motions to exclude expert testimony. *Compare* LCR 16(b)(3) ("[a]ny motion to compel discovery shall be filed and served on or before the discovery deadline" and should comply with the court's scheduling orders and any additional information on the "assigned judge's web page") *with* LCR 16(b)(4) ("parties shall file any motion to exclude expert testimony . . . no later than the deadline to file dispositive motions"). Additionally, the parties need not meet and confer prior to filing a *Daubert* motion as they do with a discovery dispute. LCR 7(d)(5).

Defendants' motion to exclude Plaintiff's experts was properly filed according to the Local Rules. The applicable scheduling order at the time placed the close of discovery on September 15, 2025, and dispositive motions were due by October 9. (Dkt. No. 32.) Defendants complied by filing their motion to exclude on October 9. (Dkt. No. 35.) While Plaintiff may have *preferred* a conferral prior to the filing of this motion, such a conferral was not required under the Local Rules. *See* LCR 7(d)(5). Plaintiff's motion for Rule 11 sanctions is thus DENIED.

## III CONCLUSION

Accordingly, and having considered Defendants' motion to exclude (Dkt. No. 35), Plaintiff's response (Dkt. No. 49), Defendants' reply (Dkt. No. 54), and the remainder of the record, Defendants' motion is GRANTED.

Dated this 2nd day of September, 2026.

David G. Estudillo
United States District Judge